Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is No. 141572, Niranjan Kanal et al. v. Merrick B. Garland. Will counsel for petitioners please come up and introduce yourself on the record to begin. Good morning. May it please the court, my name is Gregory Romanofsky and I represent the petitioners Niranjan and Gita Kanal who are here in this courtroom today and who have been here in the United States for nearly 20 years at this point. Because our supplemental brief addresses an entirely new legal issue and because we don't have the benefit of knowing the government's position with respect to this new legal issue, we respectfully request, I respectfully request to reserve half of my time for a rebuttal if I may. You may have three minutes. Thank you, Your Honor. As this court is aware, this case was held in abeyance for seven and a half years. It was held in abeyance because the petitioners have obtained lawful immigration status in the United States. They continue to have TPS at this point. And because their children, who were initially part of this case as well, also obtained authorization to remain in the United States legally pursuant to DACA, Deferred Action for Childhood Arrivals. The abeyance was also due to the fact that the petitioners have never been an enforcement priority for ICE. They have never been a threat to public safety, national security, or the border security of the United States. They have no criminal record and no other adverse factors. Initially, this court was asked to review the denial of my client's asylum claim, first by the immigration judge and then by the Board of Immigration Appeals. But now we respectfully suggest that it no longer makes sense for this court to spend its resources to determine whether the agency's denial of the asylum claim was supported by substantial evidence. Let me explain. If this court considers the merits of the underlying asylum claim, it can do one of two things. It can either uphold the agency denial in the removal order, I'm not sure what purpose it would serve given that my clients continue to have legal status in the United States, or remand the case back to the Board of Immigration Appeals, which is exactly what we're asking this court to do, but not because the denial of the asylum claim was improper, but because of the new regulations that came out on July, became final on July 29, 2024, which require that the BIA terminate my client's removal proceedings. As we made this court aware through the 28J filing, the petitioners have recently submitted a new motion to reopen with the BIA based on the new regulations. Significantly, the government did not oppose the motion, which presumably means that they agree with us that the BIA must terminate petitioner's removal proceedings in light of the new regulations. Whatever decision the BIA makes on the pending motion to reopen, I respectfully suggest that it would make this court's effort to analyze the asylum case a waste of time. It would make it a waste of time if the BIA reopens and terminates the removal proceedings, but it would also make it a waste of time if the BIA denied the motion to reopen, because if they do deny an unopposed motion to reopen based on an intervening change in law, we would be back before this court arguing an abuse of discretion, because it is a settled course of adjudication for the BIA to actually reopen cases where there's intervening change in law and when the government does not oppose the motion. Just last month, this court issued a decision in Badozi v. Garland, which dealt exactly with the issue of an unopposed motion to reopen when the petitioner becomes eligible for new relief. In that case, it was adjustment of status. In this case, the new regulations, again, require that the BIA terminate petitioner's removal proceedings, and this is why we respectfully request that this court remand the case to the BIA for the BIA to consider its legal obligations under the new regulations. Alternatively, if the court is not inclined to remand to the BIA, we respectfully request that this court hold this case in abeyance pending the resolution of the motion to reopen before the BIA. If we were to reach the merits, how would you sum up your argument briefly on the merits? Thank you, Your Honor. We would rely on the briefing in this case, but just to summarize, we believe that the credibility determination was improper for several reasons. Number one, when the judge made the adverse credibility determination, he did not take into account a plethora of evidence in the record which supported my client's testimony. It was undisputed that my client was politically active in Nepal. It was undisputed that he received death threats. There's nothing in the record that... You're saying if we look at the whole record, it was clear error, abuse of discretion to determine your client was not credible? Correct. This would be our position, Your Honor. And are you making any other arguments on the merits other than that? No other arguments other than the ones we already made, the previous counsel already made in the briefing. And what do you understand that argument to be? Other than the fact that the judge did not take into account some of the evidence in the record, we have also, the counsel, the previous counsel have also argued that the country conditions were not taken into account, especially when making the adverse credibility determination. So are you arguing that the country conditions report was ignored by the agency and that that alone would have established a prima facie case from asylum aside from the issue of the credibility determination? No, Your Honor. The petitioners have argued that the country conditions supported my client's testimony. And the fact that the judge made the adverse credibility determination without taking into account the country conditions evidence and other evidence in the record made the credibility determination improper. But your fundamental position, as I understand it, is that regardless of the correctness or lack of correctness of the adverse credibility determination, the mere grant of TPS requires the agency at this point to terminate the removal proceedings against your clients. This is exactly what the regulations say, Judge Salier. May I finish the sentence?  Yes, and this would be our position. The BIA is required to terminate, and if they're not required to terminate, there's certainly discretion to terminate in the same new regulation. And this is described in detail in our supplemental brief. Thank you. Thank you very much. Thank you, Counsel. Will Attorney for Respondent please come up and introduce herself on the record to begin?  Good morning, Your Honors. May it please the Court. Shahrzad Begay for the Attorney General. Your Honors, the sole matter in this petition for review concerns the agency's denial of asylum and related protection. Could you perhaps pull the microphone closer? Of course. Can you hear me better now, Your Honor? The sole matter of this petition concerns the agency's denial of asylum and related protection, and just to briefly address Counsel's arguments with respect to TPS and the new regulations, to the extent that he raises these claims. These are outside the scope of the Court's review, and his pending motion before the Board is a separate matter that can be pursued apart from this petition. The Court's role... What are you suggesting? That we ignore the filings? Sorry, Your Honor. That would seem rather silly if there was a potential basis for terminating the proceedings. It would be wasteful for us to go on and adjudicate the earlier petition for review. Wouldn't it be better off remanding to the BIA, consolidating everything, and getting to an end point before we pass on the position? Your Honor, respectfully, the issue with respect to the termination is entirely... with the discretion of the Board of Immigration Appeals, and it's not clear whether the Board... And it's your position that that discretion cannot be abused? It's... I can't speak to whether or not the Board would exercise its discretion and grant termination. But is that some sort of non-reviewable discretion, or is it the typical discretion which is subject to judicial review for abuse? Certainly, they have the right to bring a petition for review if they choose to do so. That's unclear if they will choose that path, but Your Honor, respectfully, that is an entirely different issue because this petition is only concerning the asylum claim and the related protection, and the Court's role is to adjudicate it based on the record before it. And as we discussed in our answering brief and supplemental brief, the agency's denial of asylum and related protection is supported by substantial evidence based on the adverse carpet lead finding. At the hearing, the petitioners presented what I see as two categories of information, his testimony, and then a fair amount of documentary evidence, not just the country conditions reports, but pictures of him, et cetera. And the I.J. found his testimony not credible. Correct. Do you view the record as the I.J. or the BIA have independently looked at the non-testimonial evidence, in other words, put his testimony to one side because it was not credible, and assessed whether the remaining evidence was by itself sufficient to warrant asylum? Certainly, Your Honor. The agency decisions clearly reflect that the agency took note of the documentary evidence. It was specifically discussed in the agency decisions, and there's no indication that it was not considered. The immigration judge's decision reflects that, you know, he took note of the country conditions evidence, as well as all the other documentary evidence that petitioners submitted, and they were specifically referred to in the decision. And the greatest issues here is the fact that his testimony was not only internally inconsistent, but it was also conflicting with documentary evidence, other witness testimony. There were several key inconsistencies that were central to his claim of persecution. And the issue here is the fact that he didn't provide any plausible explanation for them, and there were times that he had changed his testimony when confronted with these discrepancies. And just to highlight for the Court, these inconsistent accounts concern whether he was physically harmed in Nepal, the circumstances surrounding the April 2006 incident, which was a significant incident in his account, the manner in which he first encountered the Maoists, as well as the extortion payments, when and how much he paid, and when he actually joined the RPB party. If I could go back for a minute to your response to Judge Salia, is it fair to say there's been a new event that has occurred since this case was filed and originally briefed in terms of the temporary status? With respect to regulations, Your Honor? Yeah. Well, certainly that is, you know, within the right to pursue a motion to reopen before the Board based on that infallibility. But there's something new that did not exist when the BIA considered this issue. Correct. In this case. And do you agree that there's at least a chance that the BIA may conclude that it should dismiss the proceeding because of this new regulation, which gives it the authority to do so? Well, Your Honor, that would be entirely within, I can't really speak to whether or not the BIA would. It would be based on the merits of the motion. I can't say one way or the other what the BIA is going to do, which suggests to me that there's a chance they could do either. There could certainly be a chance, and the petitioners have the right if they choose to, if it's denied to. But if there is a chance that they will do something that will essentially move this entire proceeding that we're engaged in, why should we spend our time over the next several months working on this proceeding only to wake up one day and find out it's all for naught? Well, Your Honor, this is a petition that has been brought forward by petitioners, and it's been pending for quite some time. And it doesn't serve judicial economy to hold this petition while there is a separate motion pending. You know, the fact that the court can adjudicate this petition and allow for petitioners' counsel to pursue a separate path, that would be in the best interests of all involved. What happens if we work on this, do the research, do the drafting, prepare an opinion at that time, and the day before we're ready to issue that opinion, the BIA grants the petition the request to reopen? Well, Your Honor, as respectfully as I stated, they would have to provide, they would have to pursue another petition. And I just would like to note as well that, you know, in this case, there have been other decisions. Sorry, could you say that again? I'm not sure I understand. They would have to pursue a petition for review in that case. But I also just wanted to note separately that it's not entirely guaranteed that they would pursue the path. There have been other decisions in this case which they have not appealed to the court. Why would they have to pursue, if the BIA ruled in their favor on the petition to reopen? I'm sorry, could you repeat the question, Your Honor? Sure. What would happen if the BIA ruled in their favor on the petition to reopen based on the new right? Well, then they would be, if the BIA ruled in their favor, then they would pursue that path. They would, if the BIA decides to terminate proceedings, they can certainly and that would terminate this proceeding. Well, this would be separate from that, Your Honor. It's our position that this is, it's the court's role. If the BIA terminated the removal proceedings, what would we be left to  This court's role, respectfully, Your Honor, is to review only the agency's denial of asylum. That's what this petition is bringing before this court. And going about it any other way really would interfere with the interests of judicial economy. And it's, this case has been pending for too long to just allow it to continue in order for a separate relief to be pursued. Which, again, they have TPS status, which prevents them from being removed while they have this designated status. And they can certainly pursue a motion to reopen. And if they, if it's required, they can pursue any type of stay of removal from the board while their motion is pending. If their TPS status is terminated while their motion is pending. So I just, for the court, if the court would allow me just to turn to the merits of the case, if that's okay. I just wanted to highlight a couple of the things that the agency discussed. And one of the most significant issues is the fact that the physical harm issue was not raised at all until cross-examination. And petitioner, in fact, stated on direct that he had paid the mouse to avoid harm. And it's unclear why this wasn't raised earlier. He testified to two occasions in which he was harmed. One of which he testified was the most, worst assault that he experienced. So that's just one of them. And then in terms of the April 2006 incident, there was numerous accounts of what exactly happened that day. And his account varied with respect to whether the mouse forcefully entered the home, whether his brother was present during or came immediately after the incident, as well as whether he heard a direct threat with respect to the burning of his home or if his neighbor overheard it. Additionally, there was discrepancies regarding what the mouse were wearing and when he received a letter demanding extortion payments, whether it was before or after. And as the judge noted, there was just so many variations of this incident. It's unclear what exactly happened that day. And when he was confronted with the discrepancies, he did change his testimony several times. And there was also inconsistencies regarding when he encountered the malice. He testified on direct that it was in 2001 when they approached him on the street and threatened him. However, on cross-examination, he stated he was contacted by the phone and it was in 2004. But also, his affidavit states something different, that it was in 2003 when the malice killed an acquaintance. If I can just wrap up for the court. Your time is up. Okay. Just based on the foregoing, we, substantial evidence supports the adverse credulity finding and the petition for review should be  Thank you, your honors. Thank you. Thank you, counsel. Attorney for petitioners, please come up and reintroduce yourself on the record. You have a three-minute rebuttal. Good morning again. Greg Romanofsky for the petitioners. I would like to briefly address two points that my sister made in her argument. Number one, that it is within the BIA's discretion whether to terminate my client's removal proceedings. And with respect to the fact that the asylum claim is a separate matter from the termination that we're considering. As to whether the BIA has discretion to terminate my client's removal proceedings, they certainly do have discretion. But it is a separate chapter in the regulation that addresses discretionary termination. And the main factor that is listed in discussing whether the matter should be terminated as a matter of discretion is whether the motion is opposed. And as we know, in this particular case, the government elected not to oppose the motion to reopen and terminate. But there's also a separate provision in the new regulation called mandatory termination. And it says, I quote, in removal, deportation, and exclusion proceedings, the board shall terminate the case where at least one of the requirements in paragraphs A through G is met. And paragraph A is, no charge of deportability, inadmissibility, or excludability can be sustained. The only charge of removability on my client's NTA notice to appear in immigration court was present in violation of law. My client is no longer present in violation of law. They're present here in accordance with law. So no charge of removability can be sustained, and the board is required to terminate. And with respect to this being a separate matter from the asylum claim, I absolutely agree. But the principle of judicial economy clearly calls for a remand in this case. For example, in Cano Saldarriaga in 2013, this court specifically talked about piecemeal review of removal proceedings where substantive claims for relief remain pending through administrative channels. And quoted the Supreme Court's decision in Fody v. INS, which said bifurcation of judicial review of removal proceedings is not only inconvenient, it is clearly undesirable. Thank you. Well, there is, correct me if I'm wrong, there is essentially one removal proceeding. There is one. For the whole family. Correct. Yes. Just to clarify, Judge Kayada, initially the entire family were part of the case. Then the two kids were removed from the case because their removal proceedings were reopened and administratively closed due to the DACA. May I finish the sentence? They were administratively closed based on the DACA grant, so they're no longer part of this case. But the petitioners, the parents are. And so if the BIA grants you a pending unopposed request, what is there left to be done in this proceeding? If they grant the request, nothing, Your Honor, because the proceeding evaporates. If the case is reopened and terminated, there's nothing for this court to review. And I take it your point to us doesn't hinge on it being  I would still urge that we hold off. Absolutely, Your Honor. And again, I would argue that the BIA routinely grants termination in these situations, and it would be a departure from their settled course of adjudication not to do so. Thank you. Thank you. Thank you. That concludes arguments in this case.